IN THE DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| TAIRIN ATESOM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GUAM MEMORIAL HOSPITAL AUTHORITY and THEODORE LEWIS, in his official capacity as the Chief Administrator of the Guam Memorial Hospital,<br><br>Defendants. | CIVIL CASE NO. 15-00038<br><br>**REPORT AND RECOMMENDATION**<br>re Motion to Dismiss and<br>Cross Motion for Partial Summary Judgment |

This matter is before the court on two motions referred by the Chief Judge to the below-signed Magistrate Judge: (1) the Defendants' Motion to Dismiss, and (2) Plaintiff's Cross Motion for Summary Judgment. *See* ECF Nos. 5 and 7. On February 5, 2016, the court heard argument on the motions. Having reviewed all pertinent pleadings filed herein and heard argument from counsel, the court hereby issues this Report and Recommendation.

**BACKGROUND**

**1.     Procedural History**

This proposed class action was filed on October 9, 2015. *See* Compl., ECF No. 1. The Class Action Complaint (the "Complaint") asserted three grounds for the court's exercise of subject matter jurisdiction over this action: (1) pursuant to 28 U.S.C. §§ 1331 and 1343, the matters in controversy arise under the Constitution and the laws of the United States, specifically 42 U.S.C. §§ 1983 and 1988; (2) pursuant to 28 U.S.C. § 1332, the court has diversity jurisdiction since the plaintiff and all

proposed class members are non-U.S. citizens; and (3) pursuant to 28 U.S.C. § 1421(d), this court has exclusive jurisdiction with regard to the Guam Territorial Income Tax ("GTIT").

The Defendants did not answer the Complaint. Instead, the Defendants filed the instant Motion to Dismiss on November 30, 2015. *See* ECF No. 5.

On December 8, 2015, the Plaintiff filed an Opposition to the Motion to Dismiss, in conjunction with a Cross Motion for Partial Summary Judgment. *See* ECF No. 7.

On December 22, 2015, the Defendants filed a Reply Brief and an Opposition to the Cross Motion for Partial Summary Judgment. *See* ECF No. 9.

On December 23, 2015, the Chief Judge issued an Order which noted that the parties had consented to have the Magistrate Judge conduct all proceedings herein, however, the Chief Judge opted to reserve the right to conduct all proceedings in this matter. *See* ECF No. 11. The Order also referred the Defendants' Motion to Dismiss to the below-signed judge for issuance of a report and recommendation. *Id.*

On December 28, 2015, the Chief Judge referred Plaintiff's Cross Motion for Partial Summary Judgment to the Magistrate Judge. *See* ECF No. 12.

On December 28, 2015, the Plaintiff filed a Reply Brief to the Defendants' Opposition to her Cross Motion for Partial Summary Judgment. *See* ECF No. 13.

On February 5, 2016, the court heard argument on the two pending motions, and thereafter took the matters under advisement. *See* Minutes, ECF No. 16.

**2.    Factual Background**

According to the Complaint, the Plaintiff is a citizen of the Federated States of Micronesia ("FSM"). Compl. at ¶6, ECF No. 1. She has three dependent children and resides and works on Guam. *Id.* Plaintiff claims she earns only the minimum wage, or a little more than that, and has never been offered medical insurance at her places of employment on Guam. *Id.* The Plaintiff states in 2014 she earned $12,468 but, because of the Earned Income and Dependent Child tax credits, she was entitled to a $7,036 refund. *Id.* The Plaintiff asserts the Guam Memorial Hospital Authority ("GMHA") garnished the entire refund for tax year 2014 and has garnished all of the Plaintiff's refunds for the past three years to pay for hospital bills allegedly owed for services rendered to the

Plaintiff or her children. *Id.*

The garnishments by GMHA for the hospital bills allegedly owed by Plaintiff are done through offsets it filed with the Guam Department of Revenue and Taxation ("DRT") pursuant to 26 U.S.C. § 6402(e).[1] *Id.* at ¶9. Based on the Offset of Overpayment Notices attached to the Complaint, the following amounts were garnished from the Plaintiff's tax refunds:

| DATE OF NOTICE | TAX YEAR | OFFSET AMOUNT |
|---|---|---|
| 8/20/13 | 2012 | $ 283.99 |
| 5/28/14 | 2013 | $ 7,182.00 |
| 5/4/15 | 2014 | $ 7,036.00 |
| TOTAL OFFSET AMOUNT | | $ 14,501.99 |

The Plaintiff proposes to represent a class defined as

> All FAS[2] citizens residing and working on Guam pursuant to the Compact of Free Association who have dependent children and who have had yearly earned income that was so low that when they filed their income tax returns they were eligible for the EITC and/or Dependent child Tax credits, but whose refunds, including refunds attributable to those tax credits, have been garnished by GMHA, with or without due process, for hospital bills allegedly owed.

*Id.* at ¶12.

The Complaint asserts five causes of action, summarized as follows:

<u>First Claim: For Declaratory and Injunctive Relief Under 42 U.S.C. § 1983</u>:

Plaintiff asserts GMHA's garnishments violate the Supremacy Clause of the Constitution in that said garnishments "interfere[] with the intent of the Federal Government in the Compact of Free Association to promote the economic advancement and self-sufficiency of the working poor with dependent children of the FAS whom it encourages to migrate to Guam and work to lift themselves

---

[1] This is the statutory provision cited in the Complaint and in the Offset of Overpayment Notices sent by DRT to the Plaintiff. *See* exhibits attached to Complaint. As will be discussed more fully below, the court believes the correct statutory citation for these offsets is Section 6402(d), Title 26 United States Code.

[2] The complaint does not define the term "FAS" but the court presumes it refers to the Freely Associated States – consisting of the Federated States of Micronesia, the Republic of the Marshall Islands and the Republic of Palau.

and their dependent children from degrading poverty." *Id.* at ¶21. Plaintiff further alleges that the garnishments violate the "more general intent of federal income tax policy embodied in the EITC law" which seeks to "give a boost to working poor, particularly those with dependent children, who are working to lift themselves from degrading poverty." *Id.* at ¶¶2 and 21.

<u>Second Claim: For Declaratory and Injunctive Relief Under 42 U.S.C. § 1983 and Under Common Law Principles as Applicable</u>

Plaintiff claims GMHA's garnishment of Plaintiff's tax refunds "is in violation of rights of [the class members] . . . to the extent to which GMHA has already received reimbursement for those bills, in whole or in part, and will receive more reimbursement in the future, by way of federal Compact Impact funding. Under common law principles, GMHA has no right to collect twice for having provided those services; a tacit novation having effectively been entered into between GMHA and the Federal Government." *Id.* at ¶25. Plaintiff requests the court enjoin the Defendants "from so garnishing plaintiff's and the proposed Class members' refunds in the future for that fractional amount of their bills that has already been paid for, or will be paid for by the Federal Government in the future." *Id.*

<u>Third Claim: For Declaratory and Injunctive Relief Under 42 U.S.C. § 1983</u>

Plaintiff asserts "GMHA did not provide Plaintiff, or any of the members of the proposed Class, with a pre-attachment notice of and opportunity to be heard about the offsets/garnishments, so as to enable any of them to present any defense they might have to GMHA's so garnishing their refunds." *Id.* at ¶27. Plaintiff contends this violated the "Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution," in addition to violating the "expressly provided due process right . . . provided for at 26 U.S.C. § 6402." *Id.* at ¶28.

<u>Fourth Claim: For Common Law Claim for Injunctive Relief and Damages</u>

Plaintiff alleges the hospital bills she allegedly owed "were mostly from back in 2007, and earlier." *Id.* at ¶30. GMHA never filed a lawsuit against her and Plaintiff contends that the four year statute of limitation set forth in 7 Guam Code Ann. § 11303 had or should have expired before GMHA filed the offsets at issue here. *Id.* She further claims that any agreement she or other class members may have made with GMHA after the statute of limitation had run on said debts that

rendered said debts "no longer time-barred, was made without sufficient consideration, under duress, *in extremis*, and/or by way of GMHA's taking unfair and unconscionable advantage of plaintiff's and each of the proposed Class members' lack of legal sophistication about the matter." *Id*. Plaintiff asserts "[t]he aggregate amount of damages caused as alleged in this Claim is well in excess of the diversity jurisdictional threshold of $75,000."

Fifth Claim:  For Fifth Amendment Takings Claim

Plaintiff claims that GMHA's garnishing was an unconstitutional taking of her private property for a public purpose for which she is entitled to just compensation pursuant to the Fifth Amendment of the U.S. Constitution.

As noted above, the Defendants have not filed an answer to the Complaint, but instead filed a Motion to Dismiss.

**LEGAL STANDARD**

Rule 12(b)(1) allows the court to dismiss a claim for lack of jurisdiction. "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, the plaintiff bears the burden of establishing subject matter jurisdiction. Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). A court must presume lack of jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke federal court jurisdiction has the burden of establishing that jurisdiction exists.").

A party bringing a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the court must accept the factual allegations of the complaint as true. *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068,

1071 (9th Cir. 2014). However, legal conclusions in the complaint are not accepted as true, even if they are cast as factual allegations. *See id.*

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Publishing v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

In this case, the Defendants appear to argue that the allegations in Plaintiff's Complaint are insufficient on their face to establish subject matter jurisdiction. Whether subject matter exists then does not depend on resolution of a factual dispute, but rather on the allegations in the Complaint. The court must only assume the Complaint's factual allegations to be true and draw all reasonable inferences in Plaintiff's favor. Legal conclusions in the Complaint need not be accepted as true, even if they are cast as factual allegations.

## DISCUSSION

Defendants seek dismissal of the Complaint because the court lacks subject matter jurisdiction. First, Defendants argue the court has no subject matter jurisdiction over this case because the Plaintiff failed to comply with the requirements of the Government Claims Act in that she failed to first file an administrative claim for her contractual dispute with GMHA before bringing this suit. Second, the Defendants assert the Plaintiff has not presented a question arising under federal law. Finally, Defendants contend the Plaintiff has not established diversity of citizenship or the jurisdictional amount in controversy. These arguments are separately addressed below:

**1.    Whether Failure to Comply with Government Claims Act Bars Suit**

The Defendants begin their argument by asserting that the "Government of Guam enjoys broad sovereign immunity" and then note that the Guam Legislature, through the Government Claims Act, provided a limited waiver of said sovereign immunity for suits involving contractual issues or certain types of torts. *See* 5 Guam Code Ann. §§ 6101-6404. According to the Defendants, the Government Claims Act requires a claim to be filed before the commencement of an action in

the Superior Court of Guam. *See* 5 Guam Code Ann. § 6106. The Defendants assert that the Plaintiff here did not file a claim for her contractual dispute with GMHA, and even if she had properly filed a claim, any lawsuit authorized must be brought in the Superior Court of Guam, not this court.

While the Government of Guam may enjoy broad sovereign immunity, the Plaintiff is not suing the Government of Guam. The defendants here are GMHA and its Chief Administrator in his official capacity. Although GMHA is a "public corporation and an autonomous instrumentality" of the Government of Guam, *see* 10 Guam Code Ann. § 80102, the Guam Legislature has waived the doctrine of sovereign immunity for GMHA by granting it the right to sue and be sued in its enabling legislature. 10 Guam Code Ann. § 80109(e). *See also GEDA v. Island Equip. Co., Inc.*, 1998 Guam 7, ¶9 and *Perez v. GHURA*, 2000 Guam 33, ¶10.

But whether GMHA enjoys sovereign immunity is not dispositive of whether GMHA is excluded from the operation of Guam's Government Claims Act. The Government Claims Act specifically states that it

> applies, except as provided in Section 6104 of the Chapter, to the entire government of Guam, as specifically stated herein. No government agency, whether denominated as a line department, an agency or a public corporation, is excluded from the scope of this Chapter. The fact that an agency or instrumentality has or has not the right to sue or to be sued in its own name does not exclude such agency or instrumentality from the scope of this Chapter.

5 Guam Code Ann. § 6102.

For example, in the *Perez v. GHURA* case, the Supreme Court of Guam recognized that although GHURA did not enjoy sovereign immunity, the Government Claims Act was still applicable to GHURA. 2000 Guam 33 at ¶11. The Supreme Court of Guam stated that "[i]n order to sue the government or any agency thereof, autonomous or non-autonomous, the procedures of the Claims Act must first be followed. . . . Failure to file a claim prior to filing a suit warrants dismissal on a jurisdictional ground." *Id.* at ¶14.

The Plaintiff asserts that the Government Claims Act does not apply here because the suit was filed in federal court and not the Superior Court of Guam. Additionally, the Plaintiff argues because she has not filed a breach of contract claim against GMHA, the Government Claims Act

does not bar the claims now before the court.

The court concurs with the Plaintiff's position that the Government Claims Act is inapplicable here, but for a different reason. The very language of the Government Claims Act states that it "shall not apply to any claim pertaining to any tax refund[.]" 10 Guam Code Ann. § 6104. A review of the Complaint reveals that the crux of the Plaintiff's claims are that the Defendants violated her federal constitutional and statutory rights by garnishing her tax refunds to satisfy debts allegedly owed to GMHA. Because the Plaintiff's claims pertain to a tax refund, the Government Claims Act is inapplicable. Accordingly, the court recommends the Chief Judge deny the motion to dismiss with regard to the argument that the Plaintiff's failure to comply with the Government Claims Act bars her suit.

**2.      Whether Federal Question Jurisdiction Exists**

Defendants next argue that this court lacks federal subject matter jurisdiction over the Plaintiff's claims. As discussed earlier, because federal courts are courts of limited jurisdiction, the Plaintiff has the burden of proving this court has subject matter jurisdiction over this action. The only sources of federal subject matter jurisdiction available in this case are (1) federal question jurisdiction, 28 U.S.C. § 1331, and (2) diversity jurisdiction, 28 U.S.C. § 1332.

Section 1331 governs federal question jurisdiction and provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law either where federal law creates the cause of action or where plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006).

Based on the allegations in the Complaint, the Plaintiff asserts this court has federal question jurisdiction because her claims arise under certain federal laws: 42 U.S.C. § 1983, 48 U.S.C. § 1421i(h)(1), and the Takings Clause of the Fifth Amendment of the Constitution. The court will review whether these federal laws create the causes of action the Plaintiff asserts in the Complaint or whether the Plaintiff's right to relief necessarily depends on resolution of a substantial question of these laws.

a. <u>Section 1983</u>

Paragraph 5 of the Complaint asserts that this court "has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331 and 1343."[3] The Complaint alleges the actual federal law that creates the cause of action or provides the relief she seeks is Section 1983 of Title 42, United States Code.[4] Section 1983 provides a federal remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." There are two essential elements to a section 1983 action: first, that a right secured by the Constitution or laws of the Untied States was violated; and second, that the alleged deprivation was committed by a person acting under the color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).

In this case, there is no dispute that the Defendants were acting under color of law, thus satisfying the second element of Section 1983 actions. The inquiry then is what federally protected right of the Plaintiff did the Defendants violate. The Supreme Court has stated that

> Section 1983 speaks in terms of "rights, privileges, or immunities," not violations of federal law. In deciding whether a federal right has been violated, we have considered whether the provision in question creates obligations binding on the governmental unit or rather "does no more than express a congressional preference for certain kinds of treatment." . . . The interest the plaintiff asserts must not be "too vague and amorphous" to be "beyond the competence of the judiciary to enforce." . . . We have also asked whether the provision in question was "intend[ed] to benefit" the putative plaintiff.

---

[3] It is unclear which of the four subsections of Section 1343 Plaintiff relies upon. It would appear that Plaintiff is proceeding under subsection 1343(a)(3), which is the jurisdictional grant for Section 1983 causes of action. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 107 n.4 (1999). Subsection 1343(a)(3) provides district court with jurisdiction over civil actions "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

[4] Section 1983 provides

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Golden State Transit Corp.*, 493 U.S. at 106.

Turning to the allegations of the Complaint then, the Plaintiff asserts a "violation of the rights of [the Class] derivative of the Supremacy Clause of the United States Constitution." *See* Compl. at ¶21, ECF No. 1. But the Supreme Court has stated that the Supremacy Clause "is not a source of any federal right" since it simply "secure[s] federal rights by according them priority whenever they come in conflict with state law." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 613 (1965). Therefore, the Supremacy Clause in and of itself does not create rights enforceable under Section 1983.

The Plaintiff's Opposition appears to argue that she and the class have rights that accrue to them under the Compact of Free Association (the "Compact").

> In January 1986, Congress adopted the Compact of Free Association Act of 1985, Pub. L. No. 99-239, 99 Stat. 1770 (1986), approving a Compact of Free Association between the United States and the Governments of the Federated States of Micronesia and the Republic of the Marshall Islands. 48 U.S.C. § 1901. Among other provisions, the Compact authorized citizens of Micronesia and the Marshall Islands freely to "enter into, lawfully engage in occupations, and establish residence as a non-immigrant in the United States and its territories and possessions." *See* 99 Stat. at 1804. However, Congress declared its intent that the Compact not "cause any adverse consequences for the United States territories and commonwealths or the State of Hawaii." 48 U.S.C. § 1904(e)(1).

*Leon Guerrero v. Clinton*, 157 F.3d 1190, 1191 (9th Cir. 1998)

Under the Compact, Congress also declared "that, if any adverse consequences to United States territories and commonwealths or the State of Hawaii result from implementation of the Compact of Free Association, the Congress will act sympathetically and expeditiously to redress those adverse consequences." 48 U.S.C. § 1904(e)(4).

The Compact was later amended by agreement on June 30, 2004. In the amended version, Congress authorized certain reimbursement to the governments of the affected jurisdictions for the "adverse consequences" caused by the Compact. Congress "authorized to be appropriated to the Secretary of the Interior such sums as may be necessary to reimburse health care institutions in the affected jurisdictions for costs resulting from the migration of citizens of the Republic of the Marshall Islands, the Federated States of Micronesia and the Republic of Palau to the affected

jurisdictions as a result of the implementation of the Compact of Free Association[.]" 48 U.S.C. § 1921c(e)(6).

The Plaintiff argues that she and the proposed class have rights that are "derivative" of this treaty because they are "third party beneficiaries" of the Compact. *See* Opp'n at 5-6, ECF No. 7. Plaintiff asserts that because the federal government reimburses GMHA under the Compact, GMHA has already been compensated for the medical bills allegedly owed by the Plaintiff. She argues, therefore, that Defendants should not have garnished her tax refunds.

Defendants disagree with Plaintiff's assertion and argue that the "federal government has not obligated itself to pay for expenses incurred by individual FSM citizens residing in Guam." Reply at 3, ECF No. 9. Instead of providing FSM citizens with individual assistance, the Defendants claim the reimbursements authorized by the Compact are meant to assist Guam and other affected areas. At the hearing, counsel for the Defendants stated that the monies received by GMHA under the Compact are used to improve the facility and equipment at the hospital. Counsel stated GMHA does not use said funds toward individual patients' bills.

The court agrees with the Defendants. Congress expressed an intent to redress adverse consequences of the Compact by reimbursing the governments of the affected jurisdictions. If anyone is a "third party beneficiary" of the Compact's reimbursement authorizations, it would be the affected jurisdictions, such as Guam, and not any individual FSM citizen who resides here. There is nothing in the treaty's express language that would indicate it was meant to inure to the benefit of any specific individual. Even the Ninth Circuit has recognized that "Congress did not explicitly or implicitly provide for a private right of action or a private remedy pursuant to the Compact." *AHPW, Inc. v. Pohnpei*, 437 Fed. Appx. 565, 567 (9th Cir. 2011). The Plaintiff has no right – derivative or otherwise – to appropriations Congress provides to the affected jurisdictions. Thus, the Compact does not create rights enforceable by the Plaintiff under Section 1983.

The only other federal right allegedly violated then is the Plaintiff's Due Process rights under the Fifth and Fourteenth Amendments. *See* Compl. at ¶28, ECF No. 1. Specifically, she argues that when Defendants garnished her tax returns, they violated her "expressly provided due process right to a sixty day notice of, and opportunity to contest, any such garnishment . . . as provided for at 26

U.S.C. § 6402." *Id.*

The Plaintiff does not specify which subsection of Section 6402 she relies upon for the assertion that she is entitled to a 60-day notice period. The court presumes she is referring to subsection 6402(e)(4),[5] however, this subsection is inapplicable.

Section 6402 generally permits certain offsets to be taken against federal tax refunds. Subsection (c) permits offsets for past due child support. Subsection (d) permits offsets for debts owed to federal agencies, and subsection (e) allows federal tax refunds to be offset to collect delinquent state income tax obligations. In this case, the notices issued by GMHA to the Plaintiff state that the garnishments were being made pursuant to Section 6402(e). This is incorrect, however, because the garnishments by GMHA were not collected to satisfy a delinquent state income tax obligation. Instead, said garnishments were actually offsets made pursuant to Section 6402(d). The statute defines a "Federal agency" as a "department, agency, or instrumentality of the United States[.]" 26 U.S.C. § 6402(h). Under the mirror tax code system, the word "Guam" is replaced for the word "United States," *see* 48 U.S.C. § 1421i(e), and thus GMHA becomes a "Federal agency" for purposes of obtaining an offset under Section 6402(d). The offsets of Plaintiff's tax returns were not authorized under Section 6402(e) because said offsets were not collections of "past-due, legally

---

[5] Subsection (e)(4) provides that

[n]o State may take action under this subsection until such State –

(A) notifies by certified mail with return receipt the person owing the past-due State income tax liability that the State proposes to take action pursuant to this section;

(B) gives such person at least 60 days to present evidence that all or part of such liability is not past-due or not legally enforceable;

(C) considers any evidence presented by such person and determines that an amount of such debt is past-due and legally enforceable; and

(D) satisfies such other conditions as the Secretary may prescribe to ensure that the determination made under subparagraph (C) is valid and that the State has made reasonable efforts to obtain payment of such State income tax obligation.

26 U.S.C. § 6402(e)(4).

enforceable State income tax obligations" as permitted under that subsection. Instead, the offsets were taken to satisfy hospital debts allegedly owed by the Plaintiff.

Furthermore, under Section 6402(d), the Defendants were not required to give Plaintiff 60 days notice of their intent to garnish her tax returns. The only notice required for offsets made under subsection (d) is notice that the return "has been reduced by an amount necessary to satisfy such debt." 26 U.S.C. § 6402(d)(1)(C). The appropriate notices were sent to Plaintiff (*see* Notices appended to her Complaint), and thus she can not assert any violation of her due process rights.

The Plaintiff has failed to satisfy the first element of a Section 1983 action. She has not established that the Defendants' conduct deprived her of a federally protected right under either the Supremacy Clause, the Compact, or the Due Process Clauses of the Fifth and Fourteen Amendment. Thus, this court has no subject matter jurisdiction based on the Section 1983 claims.

### b. GTIT Jurisdiction

Another possible ground for federal question jurisdiction asserted in paragraph 5 of the Complaint is this court's "jurisdiction over all judicial proceedings in Guam, both criminal and civil, regardless of the degree of the offense or of the amount involved, with respect to the Guam Territorial income tax." 48 U.S.C. § 1421i(h)(1). While Section 1421i(h)(1) appears to provide this court with jurisdiction over the claims asserted in the Complaint because said claims involve the GTIT, this grant of jurisdiction is overcome by a more specific provision in the tax code. Specifically, Section 6402(g) provides:

> No court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction authorized by subsection (c), (d), (e), or (f). . . . No action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax.

26 U.S.C. §6402(g). The statute is clear. Although this court generally has jurisdiction over civil actions involving the GTIT, the court has no jurisdiction to review the tax offsets that form the basis for the Plaintiff's Complaint. Accordingly, the court finds that Section 1421i(h)(1) cannot form the basis for this court's federal question jurisdiction over the action.

### c. Takings Clause of the Fifth Amendment

The fifth claim of the Complaint asserts a claim for deprivation of the Plaintiff's Fifth

Amendment rights which, if true, would provide the court with federal question jurisdiction. Specifically, the Plaintiff contends that GMHA's garnishment of her tax refunds was "an unconstitutional taking of her . . . private property for a public purpose; for which [she is] entitled to just compensation." Compl. at ¶32, ECF No. 1.

The Fifth Amendment provides, among other things, that: "No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend V.

In this case, the Complaint is internally inconsistent. Although paragraph 32 states that her tax refund was taken for a public purpose, paragraph 6 of the Complaint asserts that GMHA garnished her tax refunds "to pay for hospital bills allegedly owed for services rendered to her or her children." This is consistent with the Offset of Payment Notices appended to the Complaint. If the tax refunds were taken to satisfy the Plaintiff's *personal* debt to the hospital, then this does not constitute a taking of private property for a *public* purpose without just compensation. The Plaintiff's Takings Clause claim is merely an attempt to attack the means by which the Defendants utilized the tax offset scheme to satisfy a debt the Plaintiff alleged owed to GMHA. The court simply cannot accept the Plaintiff's legal conclusion – that the Defendants violated the Takings Clause of the Fifth Amendment – as true.

The Plaintiff has failed to meet her burden of showing that her claims "arise under" federal law. This court lacks federal question jurisdiction over the claims, but the court must still analyze whether it has diversity jurisdiction over the action.

### 3. Whether Diversity Jurisdiction Exists

Section 1332 grants district courts with "jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). For purposes of Section 1332, the word "State" includes Guam. 28 U.S.C. § 1332(e). Here, the Defendants argue that the Plaintiff has not satisfied her burden of establishing diversity of citizenship between the parties and the minimum required amount in controversy.

a.   Diversity of Citizenship

The Complaint alleges this court has diversity jurisdiction over this matter because Plaintiff and all proposed class members are non-U.S. citizens. Compl. at ¶5, ECF No. 1. The Plaintiff also confirms this in paragraph 6 of the Complaint when she states that she is a citizen of the FSM. The Defendants argue that for purposes of diversity jurisdiction the Plaintiff is actually a citizen of Guam because she has been domiciled on Guam since 2000, is employed on Guam and pays taxes on Guam. *See* Mot. to Dismiss at 8, ECF No. 5.

The Ninth's Circuit case of *Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001) is instructive. There, the Ninth Circuit stated that

> the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 . . . (1989). The natural person's state citizenship is then determined by her state of domicile, not her state of residence.

Kanter, 265 F.3d at 857.

Here, the Plaintiff's state of citizenship is not Guam because she is an FSM citizen, not a U.S. citizen. Thus, she qualifies as a "citizen of a foreign state" under Section 1332(a)(2). Defendants nevertheless argue that there is no diversity jurisdiction because Section 1332(a)(2) has a caveat which provides that "district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are *lawfully admitted for permanent residence* in the United States and are domiciled in the same State." 28 U.S.C. § 1332(a)(2) (emphasis added). The Defendants argue that under the Compact, the Plaintiff has been admitted to Guam for permanent residence and is domiciled here.

The court disagrees. Under Section 141 of the Compact, a citizen of the FSM is permitted to "enter into, lawfully engage in occupations, and establish residence as a *non-immigrant* in the United States and its territories and possessions" for an unlimited length of time. 99 Stat. at 1804 (emphasis added). However, this does not mean that such individuals are "lawfully admitted for permanent residence" in the United States. This is a term of art defined under federal immigration laws as meaning "the status of having been lawfully accorded the privilege of residing permanently in the United States as an *immigrant* in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20) (emphasis added). Thus, the court concludes that the exception

noted in Section 1332(a)(2) is inapplicable to FSM citizens who are not lawfully admitted for permanent residence in the United States.

The parties in their briefs and at the hearing failed to discuss the state of citizenship for either of the Defendants. The Complaint simply notes that GMHA is "an autonomous agency of the Government of Guam," and that Mr. Lewis is being sued only in his "official capacity" as the "Chief Administrator" of GMHA. Compl. at ¶¶7-8, ECF No. 1. Suits against state agencies and state officials in their official capacities, however, are treated as suits against the state itself. *See Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376 (9th Cir. 1988).[6] Additionally, the Supreme Court has held that because ""[t]here is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction, a suit between a state and a citizen or a corporation of another state is not between citizens of different states." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973); *see also California v. Steelcase Inc.*, 792 F. Supp. 84, 86 (C.D. Cal. 1992) ("[F]or diversity purposes, a state is not a citizen of itself. Therefore, it cannot sue or be sued in a diversity action."). Applying this to the facts of this case, the Plaintiff's claims against GMHA and its Chief Administrator in his official capacity – an agency and official of the Government of Guam – is essentially a suit against Guam itself, and such suit cannot be based on diversity since Guam is not

---

[6] The question presented in *Morongo* was whether the district court properly exercised subject matter jurisdiction over an Indian tribe's action in the nature of interpleader against a member of the tribe and a state tax authority. The Ninth Circuit eventually reversed the district court and stated the following with regard to its analysis of diversity jurisdiction:

> As an agency of the State of California, the Board [of Equalization] has no "citizenship" for the purposes of section 1332. *See Moor v. County of Alameda*, 411 U.S. 693, 717 . . . (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."); *Postal Tel Cable Co. v. Alabama*, 155 U.S. 482, 487 . . . (1894) ("A State is not a citizen. And, under the Judiciary Acts of the United States, it is well settled that a suit between a State and a citizen or a corporation of another State is not between citizens of different States . . . .").

858 F.2d 1381.
The Indian tribe also named as defendants certain members of the Board of Equalization in their official capacities. The Ninth Circuit stated that "[a] claim alleged against a state officer acting in his official capacity is treated as a claim against the state itself." *Id.* at n.5.

a "citizen" of itself. Accordingly, the court finds that the Plaintiff has failed to establish diversity of citizenship under Section 1332.

        b.      Amount in Controversy

The second element of diversity jurisdiction under Section 1332 requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The Complaint, however, only challenges the offsets made by Defendants which total $14,501.99. This does not meet the threshold amount required by Section 1332. Even if the Plaintiff attempted to lump her offsets with those asserted by potential class members, she would have to meet an even higher threshold amount for class actions. Pursuant to Section 1332(d)(6),[7] the amount in controversy in class actions based on diversity jurisdiction has to exceed the sum of $5 million. The Plaintiff's Complaint fails to allege this higher jurisdictional amount.

Because the Plaintiff has failed to establish that (1) diversity between the parties exists and (2) the threshold amount in controversy has been met, this court can not exercise diversity jurisdiction over this matter. And, having failed to establish either federal question or diversity jurisdiction, this court must grant the Motion to Dismiss for lack of subject matter jurisdiction.

**RECOMMENDATION**

Based on the above analysis, the undersigned recommends the Chief Judge grant the Defendants' Motion to Dismiss on the grounds that this court lacks subject matter jurisdiction over the action. The court lacks federal question jurisdiction because the Plaintiff has failed to meet her burden of showing that her claims "arise under" federal law. Second, the court lacks diversity jurisdiction because the parties are not citizens of different states and because the Plaintiff has failed to satisfy the jurisdictional amount requirement.

Additionally, because the court's finding that it lacks subject matter jurisdiction is dispositive, the court declines to address the arguments raised in the Rule 12(b)(6) issues raised in the Defendants' motion and the Plaintiff's Cross Motion for Partial Summary Judgment. Without

---

[7] This subsection provides: "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

subject matter jurisdiction over the claims, the court has no authority to grant the relief sought by the Plaintiff. Thus, the undersigned recommends the Plaintiff's cross motion be dismissed as moot.

IT IS SO RECOMMENDED.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Mar 02, 2016**

**NOTICE**

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**