1

2

3

4

5

6                          **THE DISTRICT COURT OF GUAM**

7

8    TAIRIN ATESOM, individually and on behalf          CIVIL CASE NO. 15-00038
     of all others similarly situated,
9
                           Plaintiff,
10
                                                         **DECISION AND ORDER**
11         vs.                                           **ON OBJECTIONS TO**
                                                         **MAGISTRATE JUDGE'S**
12   GUAM MEMORIAL HOSPITAL                              **REPORT AND RECOMMENDATION**
     AUTHORITY and THEODORE LEWIS, in
13   his official capacity as the Chief Administrator
     of the Guam Memorial Hospital,
14
                           Defendants.
15

16          Before the court is Plaintiff Tairin Atesom's ("Atesom") Objection to Magistrate Judge

17   Joaquin Manibusan, Jr.'s Report and Recommendation.  *See* ECF No. 17.  The Magistrate

18   Judge's Report and Recommendation ("Report") suggested that this court grant the Defendants'

19   Motion to Dismiss for lack of subject matter jurisdiction, and to dismiss Atesom's Cross Motion

20   for Summary Judgment as moot.  *See* ECF Nos. 5, 7, and 18.  After reviewing the parties'

21   submissions, and relevant caselaw and authority, the court hereby **ACCEPTS** in part and

22   **MODIFIES** in part the conclusions within the Report for the reasons stated herein.[1]

23                          **I.    BACKGROUND**

24   ─────────────────────
         [1] Atesom filed a cross-motion for summary judgment (ECF No. 7).  It is dismissed as
     moot.

                                               1

## A.       Procedural History

This proposed class action was filed on October 9, 2015.  *See* Compl., ECF No. 1.  The Class Action Complaint (the "Complaint") asserted three grounds for the court's exercise of subject matter jurisdiction over this action: (1) "pursuant to 28 U.S.C. §§ 1331 and 1343, the matters in controversy arise under the Constitution and the laws of the United States;" (2) diversity jurisdiction "pursuant to 28 U.S.C. § 1332, as the plaintiff and all proposed class members are non-U.S. citizens;" and (3) pursuant to 28 U.S.C. § 1421(d), this court has exclusive jurisdiction with regard to the Guam Territorial Income Tax ("GTIT").  Compl. at ¶ 5, ECF No. 1.

The Complaint asserts five causes of action, including (1) a claim "For Declaratory and Injunctive Relief Under 42 U.S.C. § 1983;" (2) a claim "For Declaratory and Injunctive Relief Under 42 U.S.C. § 1983 and Under Common Law Principles as Applicable;" (3) a claim "For Declaratory and Injunctive Relief Under 42 U.S.C. § 1983;" (4) a claim "For Common Law . . . Injunctive Relief and Damages;" and (4) a "Fifth Amendment Takings Claim."  *See* Compl. at 10-14, ECF No. 1.

The Defendants filed a Motion to Dismiss on November 30, 2015.  Mot. Dismiss, ECF No. 5.  Atesom opposed the Motion to Dismiss on December 8, 2015, and also filed a Cross Motion for Partial Summary Judgment.  Opp'n & Cross Mot. Summ. J., ECF No. 7.  Defendants filed a Reply Brief and an Opposition to the Cross Motion for Partial Summary Judgment on December 22, 2015.  *See* Reply, ECF No. 9.

On December 23, 2015, the Chief Judge issued an Order referring the Defendants' Motion to Dismiss to the Magistrate Judge for issuance of a report and recommendation, but the Chief Judge opted to reserve the right to conduct all proceedings in this matter.  *See* Order (Dec.

23, 2015), ECF No. 11. Atesom's Cross Motion for Partial Summary Judgment was also referred to the Magistrate Judge on December 28, 2015. *See* Order (Dec. 28, 2015), ECF No. 12.

On December 28, 2015, Atesom filed a Reply Brief to the Defendants' Opposition to her Cross Motion for Partial Summary Judgment. *See* Cross Mot. Summ. J. Reply, ECF No. 13.

The Magistrate Judge heard argument on the two pending motions, and thereafter issued the Report. *See* Mins., ECF No. 16; *see also* R. &. R. at 17-18, ECF No. 17. The Report recommends that this court grant Defendants' motion to dismiss for lack of subject matter jurisdiction, and to also dismiss Atesom's Cross Motion for Summary Judgment as moot. R. &. R. at 17-18, ECF No. 17.

Atesom filed an objection to the Report, to which Defendants filed a Response. *See* ECF Nos. 18 and 19.

**B.    Factual Background**

Atesom is a citizen of the Federated States of Micronesia ("FSM") with three dependent children. Compl. at ¶ 6, ECF No. 1. She resides and works on Guam, "earn[ing] only the minimum wage, or a little more than that," and has never been offered medical insurance at her places of employment on Guam. *Id.* In 2014, Atesom earned $12,468.00, but was entitled to a $7,036.00 refund because of the Earned Income and Dependent Child Tax Credits ("EITC"). *Id.* Atesom asserts that the Guam Memorial Hospital Authority ("GMHA") garnished the entire refund for tax year 2014, and has "garnished all of her refunds for the past three years to pay for hospital bills allegedly owed for services rendered to her or her children." *Id.*

GMHA's garnishment for the hospital bills allegedly owed by Atesom were achieved through offsets it filed with the Guam Department of Revenue and Taxation ("DRT") pursuant to

3

26 U.S.C. § 6402(e).[2]  *Id.* at ¶ 9.  Based on the "Offset of Overpayment Notices" attached to the

Complaint, the following amounts were garnished from the Plaintiff's tax refunds:

| DATE OF NOTICE | TAX YEAR | OFFSET AMOUNT |
|---|---|---|
| August 20, 2013 | 2012 | $289.99 |
| May 28, 2014 | 2013 | $7,182.00 |
| May 4, 2015 | 2014 | $7,036.00 |
| TOTAL OFFSET AMOUNT | | $14,501.99 |

Atesom proposes to represent a class defined as:

> All FAS[3] citizens residing and working on Guam pursuant to the Compact
> of Free Association who have dependent children and who have had yearly earned
> income that was so low that when they filed their income tax returns they were
> eligible for the EITC and/or Dependent child Tax credits, but whose refunds,
> including refunds attributable to those tax credits, have been garnished by
> GMHA, with or without due process, for hospital bills allegedly owed.

*Id.* at ¶ 12.

## II.  LEGAL STANDARDS

In reviewing a magistrate judge's report and recommendation, the district court "shall

make a de novo determination of those portions of the report . . . to which objection is made." 28

U.S.C. § 636(b)(1).  "[T]he court may accept, reject, or modify, in whole or in part, the findings

or recommendations made by the magistrate judge."  *Id.*

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

---

[2] This is the statutory provision cited in the Complaint and in the Offset of Overpayment
Notices sent by DRT to the Plaintiff. *See* Compl. Exs. 1-3, ECF No. 1.  As will be discussed
more fully below, the court believes the correct statutory citation for these offsets is 26 U.S.C. §
6402(d).

[3] The complaint does not define the term "FAS" but the court presumes it refers to the
Freely Associated States – consisting of the Federated States of Micronesia (which includes
Kosrae, Yap, Pohnpei and Chuuk), the Republic of the Marshall Islands and the Republic of
Palau.  *See Matter of Bowoon Sangsa Co., Ltd.*, 720 F.2d 595, 600 (9th Cir. 1983) (describing
the relationship of the different districts within the Trust Territory to the United States).

4

Federal Rule of Civil Procedure ("FRCP") 12(b)(1) allows the court to dismiss a claim for lack of jurisdiction. "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, the plaintiff bears the burden of establishing subject matter jurisdiction. Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). A court must presume lack of jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke federal court jurisdiction has the burden of establishing that jurisdiction exists.").

A party bringing a FRCP 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("[FRCP] 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the court must accept the factual allegations of the complaint as true. *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). However, legal conclusions in the complaint are not accepted as true, even if they are cast as factual allegations. *See id.*

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual [FRCP] 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal

5

citation omitted); *see also Thornhill Publishing v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

### B. Motion to Dismiss for Failure to State a Claim

FRCP 12(b)(6) provides that, in response to a claim for relief, a party may assert a defense of "failure to state a claim upon which relief can be granted" by way of motion. Whether a party has sufficiently stated a claim for relief is viewed in light of FRCP 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to Rule 8, a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). The pleading standard under Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). The court must engage in a two-step procedure to determine the plausibility of a claim. *Id.* at 678–79. First, the court must weed out the legal conclusions—that is "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—in the pleading that are not entitled to a presumption of truth. *Id.* at 678. Second, the court should presume the remaining factual allegations are true and determine whether the claim is plausible. *Id.* at 679.

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common sense" to determine the plausibility of a claim given the specific context of each case. *Id.* at 679.

### III. DISCUSSION

Defendants move to dismiss Atesom's Complaint for lack of subject matter jurisdiction under FRCP 12(b)(1), and for failure to state a claim under FRCP 12(b)(6). Mot. Dismiss at 1, ECF No. 5. They challenge this court's subject matter jurisdiction over Atesom's claims on three grounds. First, Defendants argue the court has no subject matter jurisdiction over this case because Atesom failed to comply with the requirements of the Government Claims Act set forth in 5 GCA §§ 6105-6106. *Id.* at 4. In Defendants' view, the Government Claims Act required Atesom to first file an administrative claim for her contractual dispute with GMHA, and then bring an action in the Superior Court of Guam rather than this court if she was not satisfied with the results of her administrative claim. *See id.* at 4. Second, the Defendants assert that Atesom "has not presented a question arising under federal law." *Id.* at 4-7. Finally, Defendants contend that Atesom "has not established diversity of citizenship or the jurisdictional amount in controversy." *Id.* at 7. Defendants also maintain that each of Atesom's five causes of action fail to state a claim as required by FRCP (12)(b)(6). *Id.* at 9-10.

The Report recommends that this court grant Defendants' Motion to Dismiss for lack of subject matter jurisdiction over all claims because Atesom failed to show that her claims "arise under" federal law, and also because this court lacks diversity jurisdiction. R. &. R. at 17, ECF No. 17.

**A. Whether Failure to Comply with Government Claims Act Bars Atesom's Suit**

The Report concluded that because Atesom's "claims pertain to a tax refund, the Government Claims Act is inapplicable" because "[t]he very language of the Government Claims Act states that it 'shall not apply to any claim pertaining to any tax refund.'" R. &. R. at 8, ECF No. 17 (citing 5 GCA § 6104). Atesom did not object to this portion of the Report's assessment, nor did Defendants. Accordingly, this court **ADOPTS** the Report's conclusion that Atesom's failure to comply with Government Claims Act does not bar her suit.

7

**B. Whether This Court Has Federal Question Jurisdiction Over Atesom's Claims**

Defendants next argue that this court lacks federal subject matter jurisdiction over Atesom's claims. Mot. To Dismiss, ECF No. 5 at 4-7. Federal courts are courts of limited jurisdiction, and Atesom bears the burden of proving this court has subject matter jurisdiction over her claims. *See Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citation omitted).

Potential sources of federal subject matter jurisdiction in this case are (1) federal question jurisdiction, 28 U.S.C. § 1331, and (2) diversity jurisdiction, 28 U.S.C. § 1332. Section 1331 governs federal question jurisdiction and provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. "A case 'aris[es] under' federal law within the meaning of § 1331 ... if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27–28, (1983)).

Atesom asserts that this court has federal question jurisdiction because her claims arise under certain federal law including 42 U.S.C. § 1983, 48 U.S.C. § 1421i(h)(1), the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Takings Clause of the Fifth Amendment of the Constitution. Compl. at ¶ 4-5, 12-13, ECF No. 1. The Report determined that these federal laws did not confer subject matter jurisdiction over Atesom's claims. R. &. R. at 17-18, ECF No. 17. This court will conduct a *de novo* review of whether these federal laws "create[] the causes of action" the Atesom asserts in her Complaint, or whether her right to

"relief necessarily depends on resolution of a substantial question" of these laws. *See Empire Healthchoice Assur., Inc.*, 547 U.S. at 689–90.

### 1. Atesom's 42 U.S.C. § 1983 Claim

Atesom's Complaint asserts that this court "has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331 and 1343."[4] Compl. at ¶ 5, ECF No. 1. The first through third causes of action within the Complaint appear to be predicated on 42 U.S.C.A. § 1983.[5]

Section 1983 provides a federal remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color

---

[4] The Report notes that "[i]t is unclear which of the four subsections of Section 1343 Plaintiff relies upon." R. &. R. at 9 n.3, ECF No. 17. Atesom is likely proceeding under subsection 1343(a)(3), which is "the jurisdictional counterpart to § 1983" *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 107 n.4 (1999) (citation omitted). Subsection 1343(a)(3) confers federal subject matter jurisdiction over civil actions "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

[5] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983.

of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see also* 42 U.S.C. § 1983.[6]

The parties do not dispute that Defendants were acting under color of law, "thus satisfying the second element of Section 1983 actions." *See* R. &. R. at 9, ECF No. 17. The parties do dispute whether Atesom was deprived of a federally protected right for Section 1983 purposes. Hence, this court must determine whether Defendants violated any of Atesom's federally protected rights.

"Section 1983 speaks in terms of "rights, privileges, or immunities," not violations of federal law." *Golden State Transit Corp.*, 493 U.S. at 106. Relevant considerations when determining whether a federal right was violated include "whether the provision in question creates obligations binding on the governmental unit," or whether the provision "'does no more than express a congressional preference for certain kinds of treatment.'" *Id.* (quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 19, (1981)). The Supreme Court cautioned that the plaintiff's asserted interests "must not be 'too vague and amorphous' to be 'beyond the competence of the judiciary to enforce.'" *Id.* (quoting *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 431-432 (1987). Additionally, the court should determine "whether the provision in question was intend[ed] to benefit the putative plaintiff." *Id.* (alteration in original) (citations omitted).

In this case, Atesom asserts a "violation of the rights of [the Class] derivative of the Supremacy Clause of the United States Constitution." *See* Compl. at ¶ 21, ECF No. 1. Yet the Report correctly notes that the Supremacy Clause "is not a source of any federal right" because it

---

[6] Furthermore, a Section 1983 claim must be brought against a "person." *See Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, No. CV 15-00001, 2016 WL 1273191, at **5-6 (D. Guam Mar. 31, 2016). Guam officials are "persons," for Section 1983 purposes, but GMHA is not a "person." *See id.* (citations omitted). Hence, Atesom's 1983 claims cannot survive against GMHA, only Theodore Lewis in his official capacity as GMHA's Chief Administrator. *See id.*

simply "secure[s] federal rights by according them priority whenever they come in conflict with state law." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 613 (1965) (footnote omitted); *see also* R. &. R. at 10, ECF No. 17. Therefore, this court **ADOPTS** the Report's conclusion that the Supremacy Clause standing alone does not create rights that are enforceable under Section 1983.

### a. Compact of Free Association

Atesom argues in both her Opposition and her Objections to the Report that she and the class have rights that "accrue to [them] under the Compact of Free Association" (the "Compact"). Opp'n at 4, ECF No. 7; *see also* Obj. to R. &. R. at 3, ECF No. 18. In her view, the Compact confers jurisdiction to this court because the Compact, as a treaty of the United States, provides federal courts original jurisdiction over civil actions arising under treaties. *Id.*

The United States Congress adopted Public Law No. 99-239, 99 Stat. 1770 (1986), which is a Joint Resolution to approve a Compact of Free Association between the United States and the Governments of the Federated States of Micronesia and the Republic of the Marshall Islands. 48 U.S.C. § 1901. Article IV of the Compact authorizes citizens of Micronesia and the Marshall Islands to freely "enter into, lawfully engage in occupations, and establish residence as a non-immigrant in the United States and its territories and possessions." *See* 99 Stat. at 1804. Congress was mindful, however, that the Compact was not intended to "cause any adverse consequences for the United States territories and commonwealths or the State of Hawaii." *See* 48 U.S.C. § 1904(e)(1); *see also Leon Guerrero v. Clinton*, 157 F.3d 1190, 1191 (9th Cir. 1998) (citation omitted). Thus, "if any adverse consequences to United States territories and commonwealths or the State of Hawaii result from implementation of the Compact of Free Association, the Congress will act sympathetically and expeditiously to redress those adverse consequences." 48 U.S.C. § 1904(e)(4).

11

The Compact was amended by agreement on June 30, 2004, and Congress authorized reimbursements to the governments of the affected jurisdictions for certain "adverse consequences" caused by the Compact. *See* 48 U.S.C. § 1921c(e)(6); *see also* Pub. L. Nos. 108-188 (2003). In the amendment, Congress authorized appropriations "to the Secretary of the Interior such sums as may be necessary to reimburse health care institutions in the affected jurisdictions for costs resulting from the migration of citizens of the Republic of the Marshall Islands, the Federated States of Micronesia and the Republic of Palau to the affected jurisdictions as a result of the implementation of the Compact of Free Association." 48 U.S.C. § 1921c(e)(6).

Atesom argues that because GMHA receives this reimbursement money, it has "been collecting twice and thus interfering with rights of her derivative of a treaty of the United States" because they are "intended third party beneficiaries" of the Compact. *See* Opp'n at 5-6, ECF No. 7; *see also* Obj. to R. & R. at 4, ECF No. 18. In other words, because GMHA receives reimbursement money from the federal government under the Compact, GMHA has already been compensated for the medical bills allegedly owed by Atesom, which precludes GMHA's ability to garnish her tax refunds. *See* Opp'n at 5-6, ECF No. 7; *see also* Obj. to R. & R. at 4, ECF No. 18.

Defendants disagree with Atesom's characterization of the purpose of the 48 U.S.C. § 1921c(e)(6) reimbursements, and maintains that the "federal government has not obligated itself to pay for expenses incurred by individual FSM citizens residing in Guam." Reply at 3, ECF No. 9. Rather, Defendants claim these reimbursements are meant to assist Guam and other affected areas instead of providing FSM citizens with individualized assistance. *See id.* at 3-4.

The Magistrate Judge concluded that Congress did not explicitly or implicitly provide private rights of action or private remedies under the Compact, relying in large part on *AHPW, Inc. v. Pohnpei. See* R. & R. at 10-11, ECF No. 17 (citing 437 F. App'x 565, 567 (9th Cir.

2011)).  In *AHPW*, the Ninth Circuit held that "[t]he district court correctly ruled that it lacked subject matter jurisdiction pursuant to the Compact of Free Association" when Federated States of Micronesia ("FMA") business owners and co-owners attempted to bring suit against federal officials, Pohnpei State, and the FSM Development Bank.  437 F. App'x at 567.  The Ninth Circuit recognized that "Congress did not explicitly or implicitly provide for a private right of action or a private remedy pursuant to the Compact or the Agreement, whether classified as a treaty or a statute."  *Id.* (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975) (enumerating factors to be assessed when determining whether an implied right of action exists under a statute); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979) (clarifying that "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.").

"The same analysis applies when considering treaty provisions" as it does when considering whether a statute creates a private right of action.  *See id.* (citing *Cornejo v. County of San Diego*, 504 F.3d 853, 855–57, 864 (9th Cir.2007).[7]  Applying these principles, the Ninth Circuit reasoned that the district court lacked subject matter jurisdiction in *AHPW* because no language within the Compact demonstrated Congress's express or implicit intent to benefit

_____

[7] Treaties generally "confer rights upon the States that are parties to them," and "*most courts accept a presumption against inferring individual rights from international treaties*." *Cornejo*, 504 F.3d at 858–59 (emphasis added) (citations omitted).  Consequently, "the general rule is that '[i]nternational agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts, but there are exceptions with respect to both rights and remedies.'"  *Id.* (alteration in original) (quoting Restatement (Third) of Foreign Relations Law § 907 cmt. a (1987) (citations and footnote omitted)).

In *Cornejo*, the Ninth Circuit considered whether "Congress, by ratifying [Article 36 of the Vienna Convention] intended to create private rights and remedies enforceable in American courts through [42 U.S.C.] § 1983 by individual foreign nationals." 504 F.3d at 855–57, 864.  Ultimately the court concluded that the treaty did not create a private right of action under § 1983 for Defendants' failure to notify the foreign plaintiff of the right to have a consular officer when arrested.

13

individual business owners. *See id.* (citing 48 U.S.C. § 1921 (2003). Instead, the Compact focused on the encouragement of "economic development and trade between the United States and the FMA." *See id.* (citing 48 U.S.C. § 1921 (2003).

It is inconsequential that *AHPW* does not involve Compact Impact reimbursement money as suggested by Atesom. *See* Obj. to R. & R. at 7, ECF No. 18. The relevant inquiry is whether the Compact, specifically Subsection 1921c(e)(6), creates a private right of action under 42 U.S.C. § 1983. The court agrees with the Magistrate Judge and Defendants that 48 U.S.C. § 1921c(e)(6) expresses Congress's intent to "redress adverse consequences of the Compact by reimbursing the governments of the affected jurisdictions" rather than to "inure to the benefit of any specific individual." *See* R. & R. at 11, ECF No. 17. Atesom has failed to overcome the presumption against inferring an individual right of action from the Compact. *See Cornejo*, 504 F.3d at 858–59.

A district court should refrain from imposing a particular judicial remedy "through lawmaking of [its] own" where a treaty does not provide that particular remedy. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 346–47 (2006). Therefore, this court concludes that Atesom and the proposed class have no express or derivative right to the appropriations authorized by 48 U.S.C. § 1921c(e)(6).

Thus, the Compact does not create rights enforceable by the Plaintiff under Section 1983. Therefore, this court **ADOPTS** the Report's conclusion that "[t]he Plaintiff has failed to satisfy the first element of a Section 1983 action," for the first and second causes of action. She has not established that the Defendants' conduct deprived her of a federally protected right under either the Supremacy Clause [or] the Compact." *See* R. & R. at 13, ECF No. 17.

Atesom requests "leave to amend the complaint to allege that the reimbursement money *is supposed to be* used for reimbursement." Obj. to R. & R. at 3, ECF No. 18 (emphasis in

14

original).  Although leave to amend should be granted liberally, there are some limitations.  *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).  For example, leave to amend need not be granted if it "constitutes an exercise in futility." *Id.*; *see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court need not grant leave for futile amendments).

Atesom's proposed amendment is futile because the Compact does not create a private right of action under Section 1983.  Accordingly, her first and second claims are dismissed without leave to amend.

### b.  Due Process

Atesom's third claim appears to assert that her Due Process rights under the Fifth and Fourteenth Amendments were violated.  *See* Compl. at ¶ 28, ECF No. 1.  In particular, she argues that GMHA's garnishment violated her "expressly provided due process right to a sixty day notice of, and opportunity to contest, any such garnishment . . . as provided for at 26 U.S.C. § 6402," and she seeks declaratory and injunctive relief under 42 U.S.C. § 1983.  *See id.*

This court concludes that it has subject matter jurisdiction over Atesom's third claim.  The issue of whether sixty-days notice prior to offset by an agency is required under 26 U.S.C. § 6402(d) "necessarily depends on resolution of a substantial question" of a federal law.  Thus, the court **MODIFIES** the Report's conclusion and determines that it has subject matter jurisdiction over Atesom's third claim.  *See Empire Healthchoice Assur., Inc.*, 547 U.S. at 689–90.  Instead, this claim must be evaluated under FRCP 12(b)(6) as discussed more fully below.

### 2.  GTIT Jurisdiction

Atesom also contends that federal question jurisdiction is satisfied because this court has "jurisdiction over all judicial proceedings in Guam, both criminal and civil, regardless of the

15

degree of the offense or of the amount involved, with respect to the Guam Territorial income tax." 48 U.S.C. § 1421i(h)(1).

The Report concluded that 26 U.S.C. §6402 did not confer subject matter jurisdiction even though "Section 1421i(h)(1) appears to provide this court with jurisdiction over the claims asserted in the Complaint because said claims involve the GTIT, [that] this grant of jurisdiction is overcome by a more specific provision [Section 6402(g)] in the tax code." R. & R. at 13, ECF No. 17. The Report then cites a portion of Section 6402(g), specifically the following:

> No court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction authorized by subsection (c), (d), (e), or (f). . . . No action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax. No action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax.

R. & R. at 13, ECF No. 17 (citing 26 U.S.C. §6402(g)). Yet the next sentence of Section 6402(g) states that "[t]his subsection does not preclude any legal, equitable, or administrative action against the Federal agency or State to which the amount of such reduction was paid." 26 U.S.C. §6402(g).

The United States Court of Federal Claims has acknowledged that "[t]his provision prohibits federal courts from adjudicating a taxpayers challenge to the *Department of Treasury*'s actions when offsetting a tax refund, pursuant to another federal agency's request that it do so." *Wagstaff v. United States*, 105 Fed. Cl. 99, 112 n.11 (RCFC 2012) (emphasis in original). The taxpayer's right to bring an action against the agency receiving payment of the reduction, however, is preserved by 26 U.S.C. §6402(g).[8] *Id.*; *see also Dasisa v. Dep't of Treasury*, 951 F. Supp. 2d 45, 46 (D.D.C. 2013) ("[Department of Treasury] is therefore the wrong defendant in

---

[8] In some circumstances, sovereign immunity might bar the taxpayer's right of action. *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007) (holding that the Fair Debt Collection Practices Act "[did] not contain an unequivocal and express waiver of sovereign immunity, [so] the district court correctly held that it lacked subject matter jurisdiction in [that] case").

16

this matter. To pursue this matter, the plaintiff must sue the agency claiming his debt and not the debt collector"); *Ibrahim v. United States*, 112 Fed. Cl. 333, 337 (RCFC 2013) (determining the court had jurisdiction over a claim brought against the Department of Education ("ED") rather than the Department of Treasury because the ED was the agency that received the offset of plaintiff's tax refund).

Under the mirror tax code system, the word "Guam" is replaced for the word "United States." *See* 48 U.S.C. § 1421i(e). GMHA thus becomes a "Federal agency" for purposes of obtaining an offset under Section 6402(d). *See* 48 U.S.C. § 1421i(e) (permitting "other changes in nomenclature and other language, including the omission of inapplicable language, where necessary to effect the intent of this section."). Accordingly, this court disagrees with the R. & R. and concludes that Section 1421i(h)(1) can form a basis for this court's federal question jurisdiction because this court has exclusive original jurisdiction over "all judicial proceedings in Guam . . . with respect to the Guam Territorial income tax." *See* 48 U.S.C.A. § 1421i(h)(1).

Thus, the court **MODIFIES** the Report's conclusion and determines that it has subject matter jurisdiction over Atesom's fourth claim. The issue of whether the facts set forth within Atesom's fourth claim state a viable cause of action for FRCP 12(b)(6) purposes is discussed below.

### 3. Takings Clause of the Fifth Amendment

Atesom's fifth claim contends that GMHA's garnishment of her tax refunds was "an unconstitutional taking of her . . . private property for a public purpose; for which [she is] entitled to just compensation" under the Fifth Amendment of the U.S. Constitution. Compl. at ¶ 32, ECF No. 1.

The Fifth Amendment provides, among other things, that: "No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be

17

taken for public use, without just compensation." U.S. Const. amend V. GMHA challenges Atesom's takings claim on the grounds that it does not "'arise[] under' federal law" for subject matter jurisdiction purposes because it is amounts to merely "labels and conclusions." *See* Mot. Dismiss at 5-6, ECF No. 5.

The Report recognized that if "[t]he fifth claim of the Complaint asserts a claim for deprivation of the Plaintiff's Fifth Amendment rights which, if true, would provide the court with federal question jurisdiction." R. & R. at 13-14, ECF No. 17. It then conducts an FRCP (12)(b)(6) failure to state a claim analysis rather than an FRCP 12(b)(1) subject matter jurisdiction analysis to determine whether GMHA's garnishment was used for public or private purposes. *Id.* at 14. Ultimately, the Report found that it could accept Atesom's legal conclusion that GMHA violated the Takings Clause as true because the tax refunds were taken to satisfy her personal debt to the hospital, which is not a "taking of private property for a *public* purpose without just compensation." *Id.* (emphasis in original).

This court **MODIFIES** the Report's conclusion and determines that it has subject matter jurisdiction over Atesom's asserted takings claim because a takings claim arises under the federal law, namely the Fifth Amendment. Although the Report determined that the court could not accept Atesom's legal conclusion that GMHA violated the Takings Clause as true, that assessment must be evaluated under FRCP 12(b)(6) rather than FRCP 12(b)(1). Thus, the issue of whether the facts set forth by Atesom state a viable claim under the Takings Clause is discussed more fully below.

### C. Motion to Dismiss for Failure to State a Claim

This court is without subject matter jurisdiction over Atesom's first and second claims because the Compact does not expressly or implicitly provide for a private right of action.

18

Although this court determined that it had federal question subject matter jurisdiction[9] pursuant to 26 U.S.C. §6402(g), Section 1421i(h)(1) and the Takings Clause for Atesom's third, fourth and fifth claims, these claims must be evaluated under FRCP 12(b)(6) to determine whether they state a claim upon which relief may be granted.

**1. Third Claim: For Declaratory and Injunctive Relief Under 42 U.S.C. § 1983**

Atesom's third claim alleges that GMHA's garnishment violated her "expressly provided due process right to a sixty day notice of, and opportunity to contest, any such garnishment . . . as provided for at 26 U.S.C. § 6402," and she seeks declaratory and injunctive relief under 42 U.S.C. § 1983. *See* Compl. at ¶28, ECF No. 1. The Complaint does not specify which subsection[10] of Section 6402 she relies upon for the assertion that she is entitled to a 60-day notice period. *See* Compl. at ¶28, ECF No. 1. The Magistrate Judge "presume[d] she is referring to subsection 6402(e)(4)" because the notices issued by GMHA to the Plaintiff state that the garnishments were being made pursuant to Section 6402(e). *See* Compl. Exs. 1-3, ECF No. 1. The Magistrate Judge reasoned, however, that subsection is inapplicable "because the garnishments by GMHA were not collected to satisfy a delinquent state income tax obligation. Instead, said garnishments were actually offsets made pursuant to Section 6402(d)." *See* R. & R. at 12, ECF No. 17.

The Magistrate Judge noted that "[t]he offsets of Plaintiff's tax returns were not authorized under Section 6402(e) because said offsets were not collections of 'past-due, legally

---

[9] As this court has determined it has subject matter jurisdiction over these claims, it need not conduct a diversity jurisdiction analysis. Diversity jurisdiction would not save Atesom's first and second causes of action. The first and second causes of action are predicated entirely on the Compact, which does not create a private right of action.

[10] Section 6402 generally permits certain offsets to be taken against federal tax refunds, subsection (c) permits offsets for past due child support, subsection (d) permits offsets for debts owed to federal agencies, subsection (e) allows federal tax refunds to be offset to collect delinquent state income tax obligations, and subsection (f) permits collection of unemployment compensation debts.

enforceable State income tax obligations' as permitted under that subsection." *See* R. & R. at 12-13, ECF No. 17. Rather, "the offsets were taken to satisfy hospital debts allegedly owed by [Atesom]." *Id.* at 13. This court agrees that 26 U.S.C. § 6402(e) is inapplicable to Atesom's claims.

The Magistrate Judge also correctly observed that the text of 26 U.S.C. § 6402(d) does not require Defendants to give Atesom and the proposed class sixty-days notice of their intent to garnish their tax returns. *See* R. &. R. at 13, ECF No. 17. The only notice required for offsets made under 26 U.S.C. § 6402(d) is notice that "overpayment has been reduced by an amount necessary to satisfy such debt." 26 U.S.C. § 6402(d)(1)(C).

The Department of Revenue and Taxation sent Atesom the appropriate notices as required by 26 U.S.C. § 6402(d)(1)(C). *See* Compl. Exs. 1-3, ECF No. 1. Thus, the Magistrate Judge concluded that Atesom cannot assert any violation of her due process rights because the procedures required to reduce her overpayment of taxes were satisfied. *See* R. & R. at 13, ECF No. 17.

Atesom's Objection to the Report clarifies that her garnishment is appropriately classified under Section 6402(d) as opposed to Section 6402(e). *See* Obj. to R. &. R. at 9, ECF No. 18. She also acknowledges that the text of subsection 6402(d) does not include the 60-day notice requirement, but contends this "apparent lack of notice requirement . . . is a drafting oversight." *Id.* In her view, "Due process requires that the §§ 6402(e) and (f) notice requirements by imported into § 6402(d)." *See* Obj. to R. &. R. at 9, ECF No. 18.

To remedy this apparent "oversight," Atesom invites this court to insert the subsections 6402(e) and (f) notice requirements because courts have the power "to supply evident inadvertent legislative omission by the interpolation of words necessary to complete the sense of the statute and to harmonize it with the obvious legislative intent." *See Girard Inv. Co. v.*

*Comm'r of Internal Revenue*, 122 F.2d 843, 846 n.10 (3d Cir. 1941); *see also See* Obj. to R. &. R. at 9, ECF No. 18. In *Girard*, however, the court declined to adopt the petitioner's suggested interpolation with respect to the "'incorporated pocketbook provision of the Revenue Act of 1934'" because such interpolation is only permissible "when the statutory language is equivocal or where literal interpretation leads to absurdity 'so gross as to shock the general moral or common sense." *Girard Inv. Co.*, 122 F.2d at 844–46 (footnotes omitted).

"In construing a statute, the court attempts to discern and effectuate legislative intent." *White v. Pierce*, 834 F.2d 725, 728 (9th Cir. 1987) (citations omitted). The starting point is "the language of the statute itself," and "[t]he plain meaning will prevail unless a clearly expressed legislative intent is to the contrary, . . . or unless the plain meaning leads to absurd results." *Id.* (citations omitted); *see also Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, No. CV 15-00001, 2016 WL 1273191, at *3 (D. Guam Mar. 31, 2016) (Plain meaning prevails unless "the result would lead to absurd or impractical consequences, untenable distinctions, or unreasonable results.") (citations and internal quotations omitted)).

There is nothing equivocal within the text of 26 U.S.C. § 6402(d), and Atesom has not established that the lack of a sixty-days notice requirement within subsection 6402(d)(1)(C) would lead to an absurd result. Subsection (d) permits offsets for debts owed to federal agencies, subsection (e) allows federal tax refunds to be offset to collect delinquent state income tax obligations, and subsection (f) permits collection of unemployment compensation debts. The "notice" procedures within subsection (d) are quite different from those set forth in subsections (e) and (f). Subsection (d) requires the Secretary of Treasury, "[u]pon receiving notice from any Federal agency that a named person owes a past-due, legally enforceable debt," to:

> **(A)** reduce the amount of any overpayment payable to such person by the amount of such debt;

**(B)** pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and

**(C)** notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

26 U.S.C.A. § 6402(d). Unlike the three step procedure set forth in 26 U.S.C.A. § 6402(d), subsections (e)[11] and (f)[12] set forth different, four-step procedures that a State must comply with

---

[11] Before a State commences an action for recovery of delinquent state income tax obligations, subsection (e) requires that the State:

**(A)** notifies by certified mail with return receipt the person owing the past-due [State income tax liability that the State proposes to take action pursuant to this section;

**(B)** gives such person at least 60 days to present evidence that all or part of such liability is not past-due or not legally enforceable;

**(C)** considers any evidence presented by such person and determines that an amount of such debt is past-due and legally enforceable; and

**(D)** satisfies such other conditions as the Secretary may prescribe to ensure that the determination made under subparagraph (C) is valid and that the State has made reasonable efforts to obtain payment of such State income tax obligation.

26 U.S.C.A. § 6402(e).

[12] Before a State commences an action for collection of unemployment compensation debts, subsection (f) requires that the State:

**(A)** notifies the person owing the covered unemployment compensation debt that the State proposes to take action pursuant to this section;

**(B)** provides such person at least 60 days to present evidence that all or part of such liability is not legally enforceable or is not a covered unemployment compensation debt;

**(C)** considers any evidence presented by such person and determines that an amount of such debt is legally enforceable and is a covered unemployment compensation debt; and

**(D)** satisfies such other conditions as the Secretary may prescribe to ensure that the determination made under subparagraph (C) is valid and that the State has

22

to commence an action for to recover on delinquent state income tax obligations or unemployment compensation debts, which includes sixty-days notice to present evidence contesting the State's claims for the State's consideration. The procedures within subsections (e) and (f) also permit the Secretary to prescribe conditions ensuring the State made reasonable efforts to obtain payment of the obligation prior to commencing an action.

The numerous differences between the plain language of subsection (d) with subsections (e) and (f) do not support Atesom's conclusion that failure to include the sixty-days notice in subsection (d) was an inadvertent drafting error. Subsections (e) and (f) deal with requirements a State must follow before commencing a recovery action, while subsection (d) permits recovery upon notice by an agency without the need to commence an action. The plain language of Subsection (d) requires the Department of Treasury to offset tax refunds for debts owed to federal agencies upon receiving notice from that agency. Consequently, the court declines to interpolate subsections (e) and (f)'s notice requirements to subsection (d).

Atesom has not set forth facts supporting an allegation that Defendants violated the due process requirements within 26 U.S.C.A. § 6402(d)(1)[13] for garnishment of a past-due, legally enforceable debt to an agency. Therefore, the court **MODIFIES** the Report's conclusion and determines that Defendants' motion to dismiss should be granted under FRCP 12(b)(6) as to

---

made reasonable efforts to obtain payment of such covered unemployment compensation debt.

26 U.S.C.A. § 6402(f).

[13] The Eastern District of New York—affirmed by the Second Circuit—held that the Department of Education satisfied due process requirements when it followed the procedures set forth in 26 U.S.C.A. § 6402(d) prior to collecting plaintiff's defaulted student loans through a tax refund offset. *Setlech v. United States*, 816 F. Supp. 161, 167 (E.D.N.Y.), *aff'd,* 17 F.3d 390 (2d Cir. 1993).

Atesom's third claim for a due process violation because the plain language of 26 U.S.C.A. § 6402(d) does not require sixty-days notice prior to garnishment.

### 2. Fourth Claim: For Common Law Claim for Injunctive Relief and Damages.

Atesom alleges the hospital bills she allegedly owed "were mostly from back in 2007, and earlier." Compl. at ¶ 30, ECF No. 1. GMHA did not file a lawsuit against her, and she contends that the four year statute of limitation set forth in "7 GCA § 11303 had or should have expired before GMHA filed the offsets at issue here." *Id.* She further claims that any agreement she or other class members may have made with GMHA after the statute of limitation had run on said debts that rendered said debts "no longer time-barred, was made without sufficient consideration, under duress, *in extremis*, and/or by way of GMHA's taking unfair and unconscionable advantage of plaintiff's and each of the proposed Class members' lack of legal sophistication about the matter." *Id.*

A court can *sua sponte* dismiss plaintiff's complaint for failure to state a claim where the plaintiff relies on "'generic' common law torts," but fails to specify the "'source in state, federal, or foreign law for their cause of action.'" *Wyatt v. Syrian Arab Republic*, 362 F. Supp. 2d 103, 117 n.5 (D.D.C. 2005) (quoting *Acree v. Republic of Iraq*, 370 F.3d 41, 59 (D.C. Cir. 2004) *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848, 129 S. Ct. 2183, 173 L. Ed. 2d 1193 (2009) ("generic common law cannot be the source of a federal cause of action."). Accordingly, Atesom's fourth claim, which purports to set forth a "Common Law Claim for . . . Damages," fails to state an appropriate claim. *See* Compl. at 12, ECF No. 1.

Therefore, the court **MODIFIES** the Report's conclusion and determines that Atesom's fourth claim should be dismissed because generic common law is not a source of a federal cause of action.

### 3. Fifth Claim: For Fifth Amendment Takings Claim

24

Defendants maintain that Atesom's takings claim "does not present a cognizable legal theory or sufficient facts in support" because she "has not set forth any factual allegations to support her conclusion that her private property was taken for public purposes that deserves just compensation." Mot. Dismiss at 11, ECF No. 5.

Atesom's taking claim fails for another reason. A "taking" for Fifth Amendment purposes is predicated on authorized rather than invalid government action. *See Wagstaff*, 105 Fed. Cl. at 110. For example, in *Wagstaff*, the United States Federal Court of Claims determined that a former student failed to state a claim for just compensation against the Department of Education for improperly garnishing her wages and tax refund offsets to recover unpaid balances of student loans. *Wagstaff v. United States*, 105 Fed. Cl. 99, 110 (2012). The plaintiff's claim was not properly characterized as a "taking" because "[a]s a matter of law . . . a taking only occurs when the underlying governmental action is valid and authorized." *Id.* (citing *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed.Cir.1993) ("[A] claimant must concede the validity of the government action which is the basis of the taking claim to bring suit . . . ."). Consequently, the plaintiff's takings claims were dismissed for failure to state a claim because plaintiff disputed the validity of the underlying governmental action. *See id.* (citations omitted).

In this case, Atesom disputes the validity of the underlying governmental action, in this case GMHA's tax refund offsets to recover unpaid balances of her hospital bills. *See* Compl. at ¶¶ 2-4, ECF No. 1. Specifically, Atesom claims the intent of the Compact renders GMHA's recovery of these unpaid balances invalid. *See id.* Therefore, her takings claim fails as a matter of law because, like the plaintiff in *Wagstaff*, Atesom disputes the validity of the government's action.

Alternatively, because Atesom conclusively sets forth the elements of a takings claim, namely that the garnishment "was an unconstitutional taking of her [and the class's] private

property for a public purpose; for which they are entitled just compensation," her claim fails because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Hence, even if this court considers Atesom's inconsistent legal theory, her takings claim is not "plausible" under the standards set forth in *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56, 570.

Hence, the court **MODIFIES** the Report's conclusion and determines that Defendants' FRCP (12)(b)(6) motion to dismiss with respect to Atesom's fifth claim should be granted because (1) a takings claim cannot survive when a plaintiff disputes the validity of the underlying governmental action, and (2) the allegations of Atesom's Complaint are threadbare recitations of elements that are not entitled to a presumption of truth.

## IV. CONCLUSION

For the foregoing reasons, the court hereby **ACCEPTS** in part, and **MODIFIES** in part the Report. Specifically, this court:

1.  **ADOPTS** the Report's conclusion that Atesom's failure to comply with Government Claims Act does not bar her suit;

2.  **ADOPTS** the Report's conclusion that the Supremacy Clause standing alone does not create rights that are enforceable under Section 1983;

3.  **ADOPTS** the Report's conclusion that the Compact does not create a private right of action supporting her first and second claims, thus requiring dismissal of those claims without leave to amend;

4.  **MODIFIES** the Report's conclusion and determines that it has subject matter jurisdiction over Atesom's claim because the issue of whether sixty-days notice prior to offset by an agency is required under 26 U.S.C. § 6402(d) necessarily depends on

26

resolution of a substantial question of a federal law that must be evaluated under FRCP 12(b)(6);

5. **MODIFIES** the Report's conclusion and determines that it has subject matter jurisdiction over Atesom's fourth claim under 48 U.S.C. § 1421i(e);

6. **MODIFIES** the Report's conclusion and determines that it has subject matter jurisdiction over Atesom's takings claim because a takings claim arises under federal law;

7. **MODIFIES** the Report's conclusion and determines that Defendants' motion to dismiss should be granted under FRCP 12(b)(6) as to Atesom's third claim for a due process violation because the plain language of 26 U.S.C.A. § 6402(d) does not require sixty-days notice prior to garnishment;

8. **MODIFIES** the Report's conclusion and determines that Atesom's fourth claim fails because generic common law is not a source of a federal cause of action;

9. **MODIFIES** the Report's conclusion and determines that Defendants' FRCP (12)(b)(6) motion to dismiss with respect to Atesom's fifth claim should be granted because (a) a takings claim cannot survive when a plaintiff disputes the validity of the underlying governmental action, and (b) the allegations of Atesom's Complaint are threadbare recitations of elements that are not entitled to a presumption of truth.

Atesom's Complaint is hereby dismissed, with leave to amend her third through fifth claims within twenty-one days of the date of this order.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Sep 30, 2016**